UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

UNITED STATES OF AMERICA,

              -against-

ERIC OMARI THORPE,

                          Defendant.

-------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**15-CR-211 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Eric Omari Thorpe ("Defendant") is charged in a one-count indictment with

being found in the United States subsequent to a removal following a felony conviction, in

violation of 8 U.S.C. §§ 1326(a), (b)(1). Defendant now moves to dismiss the indictment on the

ground that his initial removal was unlawful. For the reasons set forth below, Defendant's

motion is GRANTED.

## I.    BACKGROUND

On May 16, 2001, Defendant, a citizen of Jamaica, was admitted to the United States as a

lawful permanent resident. (Not. to Appear (Def.'s Mem. of Law in Supp. of Mot. to Dismiss

the Indictment ("Def.'s Mot.") (Dkt. 18), Ex. A (Dkt. 18-1)).)

On July 25, 2003, Defendant was charged with possession of a weapon in a motor vehicle

in violation of Connecticut General Statute § 29-38. (Certificate of Conviction (Def.'s Mot., Ex.

B (Dkt. 18-2)).) Pursuant to the Alford doctrine, Defendant pleaded guilty on April 23, 2004.[1]

(See Plea Colloquy (Def.'s Mot., Ex. C (Dkt. 18-3)).) At the start of the Plea Colloquy, the clerk

of court announced that Defendant "ha[d] been charged with [the] crime of weapon in a motor

---

[1] A guilty plea under the Alford doctrine consists of the defendant "voluntarily, knowingly, and understandingly consent[ing] to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U.S. 25, 37 (1970).

vehicle, firearm." (Id. at 1:23-27). The prosecutor then recited the factual basis for the indictment; the police found a loaded .40 caliber Glock pistol in Defendant's car and Defendant did not have a proper permit for the pistol. (Id. at 2:5-3:6.) The court first acknowledged that Defendant was pleading guilty without confirming the prosecution's recitation of the facts. The court then accepted Defendant's Alford plea. (Id. at 5:10-16, 9:13-20.) Defendant was sentenced to five years in prison, suspended after six months, with probation for eighteen months. (Certificate of Conviction.) The Certificate of Conviction listed the crime of conviction as "Weapon in a Motor Vehicle (Firearm)." (Id.)

Subsequent to his conviction in Connecticut, the Immigration and Naturalization Service initiated removal proceedings against Defendant on the ground that his conviction was a removable offense. (Not. to Appear.) Under the Immigration and Nationality Act ("INA"), an alien may be removed from the United States if he is convicted under any law for possession of a firearm ("firearms offense"). See 8 U.S.C. § 1227(a)(2)(C). On June 23, 2004, and June 30, 2004, the immigration judge ("IJ") held hearings regarding Defendant's removability. (Def.'s Mot. at 2.) The central issue contested by counsel for Defendant and the Government at the hearings was whether the Connecticut statute was divisible, i.e., whether it could be divided into separate and independent offenses. (See generally June 23, 2004, Hearing Tr. (Def.'s Mot., Ex. D (Dkt. 18-4)); June 30, 2004, Hearing Tr. (Def.'s Mot., Ex. E (Dkt. 18-5)).) If the statute is not divisible, then the IJ may not look beyond the text of the statute to determine whether its violation is necessarily a firearms offense. If the statute is divisible, the IJ may review certain permissible extra-statutory materials in the record of conviction.

Defendant argued that the Connecticut statute was not divisible because it criminalized possession of weapons generally. Because weapons included both firearms and non-firearms,

2

the statute swept more broadly than the firearms offense under the INA. Therefore, a conviction under the Connecticut statute was not necessarily a removable offense. The Government countered that the statute was divisible because it can be divided by type of weapon into separate offenses, e.g., possession of a firearm, possession of a knife, possession of a brass knuckle, etc. Thus, according to the Government, the IJ could consult the record of conviction to determine whether Defendant pleaded guilty to possession of a firearm, which would be a removable offense. Because both the Certificate of Conviction and the Plea Colloquy indicated that the conviction related to possession of a firearm, the Government argued that Defendant's conviction qualified as a removable offense.

In an oral decision dated June 30, 2004, the IJ found that the Connecticut statute was divisible and that Defendant's conviction was a removable offense. (Oral Decision of Immigration Judge ("IJ Decision") (Def.'s Mot. Ex. F (Dkt. 18-6)) at 3-4.) The IJ relied on a prior decision of the Board of Immigration Appeals ("BIA"), which found that the same Connecticut statute was divisible. (Id. at 3 (citing Teixeira, 21 I. & N. Dec. 316 (BIA 1996)).) The IJ found no intervening Second Circuit caselaw that justified a reversal. (Id. at 3.) The IJ then concluded that Defendant's conviction was a firearms offense under the INA because "the conviction record itself reflects that it was a firearms conviction, and the transcript [of the Plea Colloquy] backs this up, saying that the conviction involved a loaded 40 caliber pistol." (Id. at 3-4.) Defendant was ordered removed. (Id. at 5.)

Defendant, representing himself pro se, appealed the IJ Decision to the BIA; the BIA affirmed in an order dated September 27, 2004, without opinion. (Decision of Board of Immigration Appeals (Def.'s Mot., Ex. I (Dkt. 18-9).) Fifty-six days later, on November 22, 2004, Defendant was removed from the United States. (Compl. (Dkt. 1) ¶ 4.)

On March 30, 2015, Defendant was arrested at John F. Kennedy Airport in Queens, New York. (Id. ¶¶ 2-3.) On April 28, 2015, Defendant was indicted for illegal reentry after removal in violation of 8 U.S.C. §§ 1326(a), (b)(1). (Indictment (Dkt. 5).)

## II.    DISCUSSION

It is a crime for an alien removed subsequent to a felony conviction to enter, attempt to enter, or be found in the United States. 8 U.S.C. §§ 1326(a), (b)(1). An alien charged with illegal reentry may challenge the validity of the prior removal. 8 U.S.C. § 1326(d); see also United States v. Lopez, 445 F.3d 90, 94 (2d Cir. 2006) (Sotomayor, J.). In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court held that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." Id. at 839. Section 1326(d) represents the codification of Mendoza-Lopez. Lopez, 445 F.3d at 94. In order to mount a successful collateral attack on an underlying removal order, a defendant must show that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); see also Lopez, 445 F.3d at 94. Defendant must satisfy all three elements of § 1326(d) to obtain a dismissal of an indictment charging illegal reentry. See United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002).

Defendant argues that (1) he exhausted all administrative remedies by contesting his removal and then appealing his removal to the BIA; (2) he was denied judicial review of his removal because: (a) neither the IJ nor the BIA advised him of the availability of a petition for

4

habeas corpus and (b) the 56 days from when his removal order became final and his physical removal from the United States was too brief to be a realistic opportunity to seek judicial review via a habeas petition; and (3) the entry of the removal order was fundamentally unfair because the IJ and BIA erred in finding that Defendant's Connecticut conviction was a firearms offense within the meaning of 8 U.S.C. § 1227(a)(2)(C), and that, but for this error, Defendant would not have been removed.

## A.    Exhaustion of Administrative Remedies

The parties agree that Defendant contested his removal by moving to terminate the proceeding, and then appealed the IJ's ruling of removal to the BIA. (See Def.'s Mot. at 4; Mem. of Law in Opp. to Def.'s Mot. to Dismiss the Indictment ("Gov't's Opp.") at 5-6.) By doing so, Defendant argues that he exhausted all of the administrative remedies available to him. (Def.'s Mot. at 4.) The Government does not challenge this contention. (See generally Gov't's Opp.) The court thus finds that Defendant satisfied the first element of his § 1326(d) collateral attack. See United States v. Clinton, 653 F. Supp. 2d 446, 449 (S.D.N.Y. 2009) ("Defendant fulfilled the first requirement of Section 1326(d) by appealing the IJ's 1997 deportation order to the BIA."); see also United States v. Garcia, No. 08-CR-32 (ARR), 2008 WL 3890167, at *13 (E.D.N.Y. Aug. 19, 2008) (exhaustion of administrative remedies "generally entails appealing the IJ's order of removal to the BIA").

## B.    Deprivation of Judicial Review

Defendant advances two arguments as to why he was deprived judicial review of his removal order. First, Defendant asserts that he was denied judicial review because neither the IJ nor the BIA advised him that he could challenge the administrative determination of removal by filing a petition for habeas corpus. (Def.'s Mot. at 4-5.) Second, Defendant argues that he had

5

no meaningful opportunity to seek judicial review of his removal because he only had 56 days to do so before he was physically removed from the United States. (Def.'s Mot. at 5.)

## 1. Right to Notice of Availability of a Petition for Habeas Corpus

The underlying presumption of Defendant's first argument is that Defendant have a right to receive notice of the availability of habeas review. The IJ and the BIA's failure to advise him of this right amounted to a deprivation of judicial review. This assertion, however, runs counter to Second Circuit precedent. In Lopez, as here, the defendant moved to dismiss an indictment charging illegal reentry by collaterally attacking his prior deportation. Id. at 93. The defendant alleged that "he was deprived of judicial review because the IJ and the BIA failed to inform him of the right to file a petition for habeas corpus." Id. at 95. The Second Circuit disagreed. Id. Then-Judge Sotomayor explained that "[b]ecause 'deportation is a drastic measure and at times the equivalent of banishment or exile,' the receipt of a final order of deportation ordinarily would put an alien on notice to look for remedies for that order." Id. (quoting Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1949)). "[W]here judicial remedies are readily available in case law and statutes, due process is not offended where no notice of those remedies is provided." Id. at 96. The Second Circuit therefore held that "aliens are deemed to have constructive notice of the availability of habeas review" of a removal order. Id. (citing United States v. Gonzalez-Roque, 301 F.3d 39, 50 (2d Cir. 2002)). Put simply, there is no "right to notice about the availability of judicial review." Id. at 95. The IJ and BIA had no obligation to advise Defendant that he could petition for habeas review to challenge their administrative ruling, and their failure to do so did not deprive Defendant of judicial review.[2]

---

[2] The defendant in Lopez appeared pro se both at his deportation hearing and his BIA appeal. Lopez, 445 F.3d at 92-93. Defendant here was represented by counsel for his removal proceeding, but appeared pro se for his BIA appeal. (Def.'s Mot. at 2.) To the extent that Defendant contends the BIA had a special obligation to advise him of the availability of habeas review because of his pro se status (see Def.'s Mot. at 5), Lopez forecloses this argument.

## 2.  Realistic Possibility to Seek Judicial Review

Defendant alternatively argues that he had no meaningful opportunity to seek judicial review because he was physically removed from the United States just 56 days after his removal order became final. (Def.'s Mot. at 5.) Defendant is correct that, while the "availability of habeas review is sometimes deemed to constitute an opportunity for judicial review," its technical availability is not sufficient to satisfy 8 U.S.C. § 1326(d). United States v. Copeland, 376 F.3d 61, 68 (2d Cir. 2004); see also United States v. Sosa, 387 F.3d 131, 137 (2d Cir. 2004). "[W]here habeas review is potentially available, an opportunity for judicial review will still be deemed to have been denied where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition." Copeland, 376 F.3d at 68. The Second Circuit has suggested, however, that "the interval of time in which it is realistically possible for an alien [to] seek judicial review may be quite short." Lopez, 445 F.3d at 99.

Not surprisingly, a survey of the relevant caselaw reveals that there is no precise cut-off for what interval of time is sufficient to be considered a "realistic possibility." Copeland, 376 F.3d at 68. The Government argues that because a realistic possibility to challenge removal can be "quite short," 56 days is enough for Defendant to seek habeas review. (Gov't's Opp. at 9.) However, the Government fails to cite any authority finding that a period of 56 days or less between a final removal order and the physical removal—as is the situation here—is sufficient. For his part, Defendant likewise has not cited any applicable caselaw holding a period of 56 days or more is considered "too brief to afford a realistic possibility of filing a habeas petition." Copeland, 376 F.3d at 68. (See Gov't's Opp. at 9 ("Clearly, the one day referred to in Copeland

is not enough but ten months has been deemed adequate."); Def.'s Reply (Dkt. 22) at 2 ("a period close to one month was found insufficient" in Sosa).)

The court first notes that Defendant's reliance on United States v. Calderon, 391 F.3d 370 (2d Cir. 2004), and United States v. Castro, 472 F. Supp. 2d 321 (E.D.N.Y. 2007), is misplaced. The period of time between a final removal order and physical removal in these cases was 42 days and 3 months, respectively. However, in both Calderon and Castro, the IJ and the BIA affirmatively misinformed the defendant about the availability of certain administrative relief.[3] See Calderon, 391 F.3d at 372-73, 76; Castro, 472 F. Supp. 2d at 329-30. "[T]he analysis differs where the government affirmatively misleads an alien about the availability of relief." Lopez, 445 F.3d at 99. Indeed, when the Government misleads the alien, even periods of eighteen months can be "too brief." See Lopez, 445 F.3d at 93, 100. Defendant has not alleged that the IJ or BIA misled him, and therefore Calderon and its progeny are inapposite.

In cases where there are no allegations of misinformation, the Second Circuit has found that one month is not enough time for an alien to seek habeas review of a removal order. Sosa, 387 F.3d at 138. Sosa reasoned that a one-month period is too short for a pro se litigant to find a lawyer and then file a petition for habeas review. 387 F.3d at 138. A court in this district has further held that a two-month period was comparable to the one-month period in Sosa, and therefore, "too brief for resort to habeas to be 'realistically possible.'" United States v. Garcia, No. 08-CR-32 (ARR), 2008 WL 3890167, at *12 (E.D.N.Y. Aug. 19, 2008) (citing Copeland, 391 F.3d at 68).

---

[3] Defendant acknowledges that in Castro, the defendant was misadvised of his right to seek administrative relief. (Def.'s Reply at 2 n.1.)

8

The court agrees. The BIA affirmed Defendant's removal on September 27, 2004, and Defendant was physically removed from the United States on November 22, 2004, just shy of the two months that was deemed too short in Garcia. The 56 days that Defendant, a pro se litigant, had to discover the availability of habeas review and then to file such petition is "too brief to afford a realistic possibility of filing a habeas petition." Copeland, 376 F.3d at 68. Accordingly, the court finds that habeas review was only technically available to Defendant, and judicial review was not realistically possible. Because Defendant has shown that he was deprived judicial review, the court will proceed to consider the third element of his collateral attack.

### C.    Procedural Unfairness

For the entry of a removal order to be "fundamentally unfair," a defendant "must show both a fundamental procedural error and prejudice resulting from that error." United States v. Perez, 330 F.3d 97, 104 (2d Cir. 2003) (quoting Fernandez-Antonia, 278 F.3d at 157 (2d Cir. 2002)). Prejudice can be shown "where there is a reasonable probability that, but for that error, the result of the proceeding would have been different." United States v. Daley, 702 F.3d 96, 100 (2d Cir. 2012) (alterations and citations omitted). "A 'reasonable probability' is a probability 'sufficient to undermine the confidence in the outcome.'" United States v. Bedros, No. 06-CR-249 (NGG), 2007 WL 2455135, at *6 (E.D.N.Y. Aug. 23, 2007) (quoting United States v. Scott, 394 F.3d 111, 118 (2d Cir. 2005)).

The gravamen of Defendant's argument is that the IJ and BIA erred in finding that Defendant's conviction under Conn. Gen. Stat. § 29-38 was a firearms offense within the meaning of 18 U.S.C. § 921(a) and 8 U.S.C. § 1227(a)(2)(C).

1. <u>Fundamental Procedural Error</u>

Under the Immigration and Nationality Act, a conviction under any law for possession of a firearm, as the term is defined in 18 U.S.C. § 921(a), is a removable offense. 8 U.S.C. § 1227(a)(2)(C). In deciding whether a prior state conviction qualifies as a removable offense, courts "generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." <u>Moncrieffe v. Holder</u>, 133 S. Ct. 1678, 1684 (2013). Under this analytical framework, first developed in <u>Taylor v. United States</u>, 495 U.S. 575 (1990), courts "look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal [prohibition.]" <u>Moncrieffe</u>, 133 S. Ct. at 1684 (quoting <u>Gonzales v. Duenas-Alvarez</u>, 549 U.S. 183, 186 (2007)).[4] Examination of the prior conviction centers on what it "necessarily involved," and the conviction is presumed to be based on "the least of the acts criminalized." <u>Id.</u> (alteration and citation omitted). However, "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" <u>Id.</u> at 1684-85 (quoting <u>Gonzales v. Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007)).

The categorical approach is not always applicable. Circumstances sometimes justify a departure. The "modified categorical approach" was developed because "the categorical approach presented a problem in cases where the statute of prior conviction covers multiple subjects." <u>United States v. Beardsley</u>, 691 F.3d 252, 260 (2d Cir. 2012). In <u>Descamps v. United</u>

---

[4] Although <u>Taylor</u> addressed whether a prior state conviction qualifies as a predicate offense for purposes of sentence enhancement under the Armed Career Criminal Act ("ACCA"), the analysis is applied interchangeably in INA and ACCA cases. <u>See, e.g.</u>, <u>Moncrieffe</u>, 133 S. Ct. at 1684 (INA); <u>Taylor</u>, 495 U.S. at 599-600 (ACCA).

States, 133 S. Ct. 2276 (2013), the Supreme Court analyzed a Massachusetts statute that criminalized "Breaking and Entering at Night" in four alternative locations: a "building, ship, vessel, or vehicle." See id. at 2284 (quoting Nijhawan v. Holder, 557 U.S. 29, 35 (2009)). A court reviewing only the statutory text would not be able to tell if a conviction under this statute involved the crime of (1) breaking and entering at night of a building, (2) breaking and entering at night of a ship, (3) breaking and entering at night of a vessel, or (4) breaking and entering at night of a vehicle. See id. The Court described this statute as "divisible" because it contains alternative elements such that it can be divided into different offenses. See id.

The Second Circuit has further elaborated that statutes are divisible where the removable and non-removable offenses comprise "a disjunctive list of proscribed conduct." Lanferman v. Bd. of Immigration Appeals, 576 F.3d 84, 90 (2d Cir. 2009) (quoting Dulal-Whiteway v. U.S. Dep't of Homeland Sec., 501 F.3d 116 (2d Cir. 2007), abrogated on other grounds by Nijhawan). For example, in Kuhali v. Reno, 266 F.3d 93 (2d Cir. 2001), the court held that a statute which prohibits "exporting either firearms or ammunition" is divisible because it contained discrete elements of a "disjunctive list of proscribed conduct," namely, a ban on the export of firearms and a ban on the export of ammunition. See id. at 106-07. Similarly, in Canada v. Gonzales, 448 F.3d 560 (2d Cir. 2006), the court analyzed a statute criminalizing assault on "public safety officers," where "public safety officers" are defined by categories of persons "listed sequentially, each separated by a comma, and are phrased in the disjunctive." Id. at 567-68 (citing Conn. Gen. Stat. § 53a-167c(a)). The court held that the disjunctive nature of

the statutory text allows for the protected categories of officers to be readily distinguishable and separable, and thus the statute was divisible. Id.[5]

### a. Divisibility

Defendant and the Government disagree as to whether Conn. Gen. Stat. § 29-38 is divisible, i.e., whether the categorical or modified categorical approach applies. (See Def.'s Mot. at 7; Gov't Mot. at 11.) At the time of Defendant's conviction, § 29-38 provided that:

> Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be fined . . . or imprisoned . . . .

> The word "weapon", as used in this section, means any BB. gun, any blackjack, any metal or brass knuckles, any police baton or nightstick, any dirk knife or switch knife, any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, any stiletto, any knife the edged portion of the blade of which is four inches or over in length, any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument.

1999 Conn. Acts 212 (Reg. Sess.) (emphases added).

---

[5] The court notes that other circuits are split as to when a statute is divisible. The Supreme Court recently granted a petition for writ of certiorari to resolve this conflict. See Mathis v. United States, No. 15-6092, 2016 WL 207258 (U.S. Jan. 19, 2016). At present, the Fourth and Ninth Circuits hold that an alternative statute is divisible only if, under state law, jurors are required to be unanimous as to the form of the offense that a defendant committed. See Omargharib v. Holder, 775 F.3d 192, 198-99 (4th Cir. 2014); Rendon v. Holder, 764 F.3d 1077 (9th Cir. 2014). The Sixth, Eighth, and Tenth Circuits, on the other hand, hold that where a statute sets out separate versions of a crime in the alternative, the statute is divisible without further inquiry into juror unanimity requirements. United States v. Mathis, 786 F.3d 1068, 1074-75 (8th Cir. 2015); United States v. Ozier, 796 F.3d 597, 601-02 (6th Cir. 2015); United States v. Trent, 767 F.3d 1046, 1057 (10th Cir. 2014), cert. denied, 135 S. Ct. 1447 (2015). Although it has not directly confronted this issue, the Second Circuit has never required such an inquiry into state law. See, e.g., Canada, 448 F.3d 560; Kuhali, 266 F.3d 93. Nor is the court convinced that the Supreme Court intended for the courts to "parse state law" to decide the question of jury unanimity when applying the modified categorical approach. Descamps, 133 S. Ct. at 2285 & n.2 ("Whatever a statute lists (whether elements or means), the documents we approved in Taylor and Shepard—i.e., indictment, jury instructions, plea colloquy, and plea agreement—would reflect the crime's elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.").

A plain reading of the statute reveals that it is divisible. The statutory text provided alternatives of "any weapon, any pistol or revolver[,] or any machine gun." Defendant fails to explain how the construction of § 29-38 substantively differs from the divisible statutes in Descamps, Kuhali, and Canada. In those cases and here, the statutes of conviction involved alternative elements phrased disjunctively, and thus can be separated to form distinct offenses, e.g., (1) breaking and entering into a building, (2) breaking and entering into a ship, (3) breaking and entering into a vessel, or (4) breaking and entering into a vehicle. The alternative elements of the Connecticut statute, similarly constructed using the disjunctive, can also be rephrased as separate crimes, e.g., knowing possession in a vehicle of (1) a weapon (as the term is defined in the statute), (2) a pistol or a revolver, or (3) a machine gun.[6] Accordingly, the court finds that the statute is divisible.

Rather than analyze the language of the statute, Defendant instead relies on two decisions from the Supreme Court of Connecticut to assert that the essential elements of a § 29-38 violation are "(1) that defendant owned, operated or occupied the vehicle; (2) that he had a weapon in the vehicle; (3) that he knew the weapon was in the vehicle; and (4) that he had no permit or registration for the weapon." (Def.'s Mot. at 6 (citing State v. Ramos, 860 A.2d 249 (Conn. 2004), and State v. Delossantos, 559 A.2d 164 (Conn. 1989)).) Defendant argues that because this formulation of the elements refers generically to a "weapon," the statute cannot be

---

[6] The court notes that § 29-38 could arguably be subdivided further through the various instruments listed in the definition of "weapon," such that the statute contains much more than 3 alternative elements, e.g., knowing possession of a dirk knife, knowing possession of a brass knuckle, etc. Teixera, 21 I. & N. Dec. 316 (BIA 1996), a case relied on by the IJ in his decision, would appear to support this approach. In Teixeira, the BIA analyzed the prior version of § 29-38 that was implicated in State v. Delossantos, 559 A.2d 164 (Conn. 1989) and State v. Ramos, 860 A.2d 249 (Conn. 2004), which contained a general prohibition of any weapon in a vehicle, and then defined the word weapon later in the statute. The BIA found that this version was divisible because the specifically enumerated instruments listed in the definition can be substituted into the word weapon to create a series of alternate offenses. See id. at 318. However, the court need not decide this issue, as it is not necessary to the disposition of the instant case.

divided into subparts and so the statute is not divisible. Because weapon encompasses firearms as well as instruments like brass knuckles, blackjacks, and knives, a conviction under § 29-38 cannot serve as a removable firearms offense.

Defendant's argument is flawed. As a preliminary matter, Defendant offers no reason—and the court is not aware of any—why the court can or should ignore the disjunctive statutory text of "any weapon, any pistol or revolver[,] or any machine gun" in favor of a judicial shorthand referring to a generic "weapon." In any event, the cases Defendant cites involve an earlier version of § 29-38, and not the statute of conviction in this case. The earlier statute, in relevant parts, prohibits the knowing possession of "any weapon for which a proper permit has not been issued . . . or has not [been] registered . . . ." 1987 Conn. Acts 220 (Reg. Sess.); see also Ramos, 860 A.2d at 787 n.2; Delossantos, 559 A.2d 165 n.2. The statute then defines "weapon" to include "any pistol or revolver, any dirk knife or switch knife . . . and any other dangerous or deadly weapon or instrument . . . ." See 1987 Conn. Acts 220 (emphasis added); see also Ramos, 860 A.2d at 787 n.2; Delossantos, 559 A.2d 165 n.2. The Connecticut Legislature subsequently rephrased § 29-38 to prohibit the knowing possession of "any weapon, any pistol or revolver[,] or any machine gun," and then redefined "weapon" in a list that excluded pistols, revolvers, or machine guns to avoid duplication. 1999 Conn. Acts 212. Faced with a version of the statute which referred generically to "weapon," the Supreme Court of Connecticut understandably listed the elements to include only one generic "weapon" element.

Given the differences in language, the elements of the version of § 29-38 provided in <u>Ramos</u> and <u>Delossantos</u> is inapplicable here.[7]

*b.*   *Review of Extra-Statutory Materials*

Once a court determines that a statute is divisible and that the modified categorical approach is appropriate, it may then consult the record of conviction, such as the charging document, jury instructions, plea agreement, plea colloquy transcript, or "some comparable judicial record of the factual basis for the plea." <u>Moncrieffe</u>, 133 S. Ct. at 1684 (quotations and citations omitted). Where the prior conviction was established through a plea, courts may rely on "(i) proof that the defendant admitted to predicate conduct when confirming the factual basis for a valid plea; (ii) proof that the charge was narrowed to include only predicate conduct." <u>United States v. Savage</u>, 542 F.3d 959, 966 (2d Cir. 2008) (citing <u>Shepard v. United States</u>, 544 U.S. 13 (2005)). "By reviewing the extra-statutory materials . . . , courts could discover 'which statutory phrase,' contained within a statute listing 'several different' crimes, 'covered a prior conviction.'" <u>Descamps</u>, 133 S. Ct. at 2285 (quoting <u>Nijhawan</u>, 557 U.S. at 41). The modified categorical approach allows a court to separate the different crimes prohibited in a divisible statute, and then determine whether the record of conviction narrows the conviction to a specific crime. <u>See id.</u> at 2284-85. If the conviction can be narrowed, then the court essentially applies the categorical approach and assesses whether a violation of that narrowed crime necessarily

---

[7] Furthermore, as noted previously, the definition of weapon in Defendant's version of § 29-38 expressly excludes pistols, revolvers, or machine guns, because they are separately incorporated into the part of the statute describing the conduct prohibited. <u>See</u> 1999 Conn. Acts 212. If there is only one generic "weapon" element rather than alternative elements of "any weapon, any pistol or revolver[,] or any machine gun," then a Catch-22 would befall the courts. When applying the single "weapon" element, courts would either have to (1) judicially rewrite the statutory definition of weapon to include pistols, revolvers, and machine guns in order to give effect to the plain meaning of the statute, which proscribes the possession of these firearms in a vehicle; or (2) blindly apply the statutory definition of weapon and find that possession of pistols, revolvers, or machine guns in a vehicle does not violate § 29-38, a finding that would be in direct conflict with the text of the statute. Neither option is workable. Defendant's argument therefore cannot stand.

15

involves a removable offense. See id. Viewed in this light, the modified categorical approach is simply a tool to implement the categorical approach where statutes contain alternative elements. The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." Id. at 2285. "It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Id. at 2283.

Here, Defendant pleaded guilty under the Alford doctrine, which consists of a defendant "voluntarily, knowingly, and understandingly consent[ing] to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U.S. 25, 37 (1970). A defendant therefore does not confirm or accept the factual basis of an Alford plea. See Savage, 542 F.3d at 962. This distinguishing feature limits what extra-statutory material a court may consider when applying the modified categorical approach, because there is no "proof that the defendant admitted to the predicate conduct when confirming the factual basis for [the Alford] plea." Id. The Government, then, must present "proof that the charge was narrowed to include only predicate conduct." Id.

The parties agree that when applying the modified categorical approach, the court may look to Defendant's Certificate of Conviction. (Gov't's Opp. at 20; Def.'s Reply at 4.) See also United States v. Green, 480 F.3d 627, 633 (2d Cir. 2007) (approving the use of New York Certificates of Disposition); Kuhali, 266 F.3d at 107 (approving the use of judgments of conviction). The Certificate of Conviction provides that Defendant pleaded guilty to "Weapon in a Motor Vehicle (Firearm)" in violation of Conn. Gen. Stat. § 29-38. (Certificate of Conviction.)

The parties dispute what, if anything, the word "firearm" divulges about the statutory phrase upon which Defendant was convicted.[8]

Defendant first argues that Connecticut's definition of firearm is broader than the federal definition because it does not explicitly exclude antique firearms, whereas the federal definition does. (Def.'s Mot. at 8; Def.'s Reply at 4.) See also 18 U.S.C. § 921(a)(3) ("The term 'firearm' . . . does not include an antique firearm."). The implication is that Connecticut law prohibits more conduct than federal law, and thus, a violation of Connecticut law—possession of an antique firearm in a vehicle—does not necessarily involve a removable offense. Defendant relies on United States v. Aguilera-Rios, 769 F.3d 626, 636 (9th Cir. 2014), which found that violation of a California firearms statute that did not have an antique firearms exception could not serve as a removable offense because federal law has such an exception. (Def.'s Mot. at 8.) However, Aguilera-Rios itself limits its reach from the circumstances here. The Ninth Circuit noted that there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." Aguilera-Rios, 769 F.3d at 635 (quoting Moncrieffe, 133 S. Ct. at 1693 (quoting Duenas-Alvarez, 549 U.S. at 193)). To show a realistic probability, a defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." Duenas-Alvarez, 549 U.S. at 193. Because California does prosecute individuals for possession of antique firearms under its firearms statute, the Ninth Circuit held that a violation of

---

[8] The parties dispute whether any part of the transcript of Defendants' Alford plea colloquy may be used. (Def.'s Mot. at 8 (arguing that the plea colloquy cannot be used); Gov't's Opp. at 20 (relying on the clerk's recitation of the charge against Defendant).) However, the Government seeks only to rely on the part of the transcript where the clerk announced the charge against Defendant as "the crime of weapon in a motor vehicle, firearm." (Gov't's Opp. at 20 (quoting Plea Colloquy at 2:6-14).) As with the Certificate of Conviction, the critical word is "firearm." The Government does not appear to rely on the prosecutor's recitation of the facts, which stated the weapon found in Defendant's car was a .40 caliber Glock pistol. (See Gov't's Opp. at 20; see also Plea Colloquy at 2:5-3:6.) Because the information the Government seeks to rely is duplicative of the Certificate of Conviction, the court need not resolve whether this portion of the Plea Colloquy can be used.

the California statute cannot be a removable offense. Id. Defendant does not cite a single instance—nor can the Court find any—where an individual was prosecuted for possession of an antique firearm under § 29-38. The absence of any such prosecution dooms Defendant's argument.

Defendant alternatively asserts that firearm provides no clarity as to which statutory phrase Defendant's conviction related to, because firearm is not used or defined in the statute of conviction. (Def.'s Reply at 4.) The Government counters that the existence of the word firearm, "'in and of itself, provid[es] clear and convincing evidence that' the defendant was convicted of having a firearm in a motor vehicle." (Gov't's Opp. at 20 (quoting Kuhali, 266 F.3d at 107).)

While the mismatch in language between the statute of conviction and the Certificate of Conviction precludes a swift disposition, the court must still analyze whether the word firearm can help reveal which statutory phrase—"weapon," "pistol or revolver," or "machine gun"— covered Defendant's prior offense. If the word firearm in the Certificate of Conviction necessarily excludes the "weapon" alternative element, then the court can conclude that the charge against Defendant was narrowed to possession of either a "pistol or revolver" or a "machine gun." Such a conviction would easily qualify as a firearms offense under the INA, and Defendant was removable. However, if the use of the term firearm can result in a conviction under the "weapon" prong, then Defendant was not subject to removal because the definition of weapon includes firearms and non-firearms, and therefore is broader than what is prohibited by the INA's firearms offenses. The pertinent inquiry then, is whether a person can violate § 29-38 through the "weapon" element by possessing a firearm, i.e., whether it is a crime under this statute to possess a firearm that is not a pistol, revolver, or machine gun.

18

Under federal law, a firearm is "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3).[9] Under § 29-38, weapon is defined as:

> any BB. gun, any blackjack, any metal or brass knuckles, any police baton or nightstick, any dirk knife or switch knife, any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, any stiletto, any knife the edged portion of the blade of which is four inches or over in length, any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or <u>any other dangerous or deadly weapon or instrument</u>

1999 Conn. Acts. 212 (emphasis added). None of the instruments specifically listed in this definition can be considered a firearm. <u>See id.</u> However, the definition does include a residual clause of "any other dangerous or deadly weapon or instrument." <u>Id.</u> Any prosecution under § 29-38 for possession of firearms like shotguns or rifles (types of firearms that are not pistols, revolvers, or machine guns) must be accomplished through this residual "dangerous or deadly weapon" clause. This is indeed the case. For example, in <u>State v. Peterson</u>, 534 A.2d 1237 (Conn. App. Ct. 1987), the Appellate Court of Connecticut upheld a conviction of § 29-38 based on possession of a loaded shotgun because "[i]t was beyond any question a dangerous weapon or deadly weapon or instrument." <u>Id.</u> at 1243; <u>see also</u> <u>State v. Lugo</u>, No. 04-CR-578928, 2005 WL 3112835, *1 (Conn. Super. Ct. Sept. 27, 2005) (reviewing sentence of petitioner who pleaded guilty to a violation of § 29-38 after a shotgun was found in his car); <u>cf.</u> <u>State v. Scully</u>, 490 A.2d 984, 988 (Conn. 1985) (finding "an unloaded rifle and shotgun are not per se

---

[9] Firearm is defined in a separate Connecticut statute as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged." Conn. Gen. Stat. § 53a-3(19). However, the Supreme Court of Connecticut has ruled that this definition does not apply to § 29-38. <u>See</u> <u>Delossantos</u>, 559 A.2d at 172 ("we conclude that the legislature did not intend the definition of 'firearm' in § 53a-3(19) to apply to . . . § 29-38"); <u>see also</u> <u>State v. Banks</u>, 755 A.2d 951, 962 (Conn. App. Ct. 2000). Nevertheless, this definition helps inform the court as to the terms of art used in Connecticut to describe other forms of firearms not expressly enumerated in the statute of conviction.

deadly weapons" under § 29-38, implying that a loaded rifle or shotgun may be). An individual thus can be convicted of possession of a firearm under the statute of conviction by the "weapon" element, without implicating the other alternative elements "pistol or revolver," or "machine gun." A weapon—and more specifically a dangerous or deadly weapon—can be a hammer or a shotgun, so this alternative element sweeps more broadly than the conduct proscribed by a firearms offense. See Ramos, 860 A.2d at 258 (finding a hammer was a "dangerous or deadly weapon or instrument"). Consequently, the word firearm in the Certificate of Conviction does not help narrow the charge to a statutory phrase ("pistol or revolver" or "machine gun") that "categorically fits within the 'generic' federal [definition]" of a firearms offense. Moncrieffe, 133 S. Ct. at 1684 (quoting Duenas-Alvarez, 549 U.S. at 186).

There are signs, however, that the Connecticut Legislature intended to exclude firearms from "any other dangerous or deadly weapon or instrument" when it defined weapon. As the principle of ejusdem generis counsels, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15 (2001) (quoting 2A Norman J. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (5th rev. ed. 1992)). In Circuit City Stores, the Supreme Court analyzed the scope of the phrase "any other class of workers engaged in . . . commerce," and concluded that it only included transportation workers because it was preceded in the same sentence by "seamen" and "railroad employees." Id. at 114-19. Here, the general words of "any other dangerous or deadly weapon or instrument" is preceded by a long list of non-firearm weapons. See 1999 Conn. Acts. 212. If dangerous or deadly weapon is to be "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific

words," then dangerous or deadly weapon would only apply to non-firearms. An overbroad interpretation of dangerous or deadly weapon would also render as "misleading surplasage" the list of non-firearms in the definition of weapon, as well as the enumeration of pistol, revolver, and machine gun in the body of the statute, specific types of firearms that were intentionally removed from the definition of weapon. See Yates v. United States, 135 S. Ct. 1074, 1087 (2015). Moreover, Connecticut has a separate statute which criminalizes the "possess[ion] in any vehicle or snowmobile [of] any [loaded] shotgun, rifle or muzzleloader." Conn. Gen. Stat. § 53-205(a). The explicit references to shotguns and rifles in § 53-205 may suggest a legislative intent to exclude the same from § 29-38. Lastly, there appears to be a dearth of prosecutions under § 29-38 for possession of firearms that are not pistols, revolvers, or machine guns.[10]

Nevertheless, the Appellate Court of Connecticut unequivocally decided the reach of "any other dangerous or deadly weapon or instrument" as it relates to loaded shotguns in Peterson, and it appears to remain good law.[11] The court will follow this interpretation of the residual clause and find that it includes firearms such as loaded shotguns. Accordingly, the word firearm in the Certificate of Conviction offers no help in narrowing Defendant's conviction to a particular statutory phrase of § 29-38, much less one that necessarily involved a firearms offense.

---

[10] To be clear, the court does not take a view on how Connecticut courts should interpret a Connecticut statute. The court merely notes for completeness's sake alternate arguments for the scope of the term "dangerous or deadly weapons."

[11] The Peterson court analyzed a version of § 29-38 that contained one general "weapon" prong and which defined weapon to include pistols and revolvers, in addition to a list of non-firearms and the residual phrase "any other dangerous or deadly weapon or instrument." See 1987 Conn. Acts 220 (Reg. Sess.). The presence of pistols and revolvers in the definition suggests that dangerous or deadly weapon could encompass firearms as well as non-firearms. When § 29-38 was restructured to move pistols and revolvers from the definition of weapon to the description of the proscribed conduct, the Connecticut Legislature characterized the alterations as "technical corrections." June 4, 1999, Hearing on S.B. 1166 Before the Connecticut Senate, Conn. S. Tr., 6/4/1999 (Conn. 1999) (statement of George Jepsen, Senator). The Legislature was silent as to the extent that these "technical corrections" affect existing caselaw, and certainly did not address the holding in Peterson.

The IJ and BIA's determination that Defendant's conviction was a firearms offense under 8 U.S.C. § 1227(a)(2)(C) was erroneous and such error qualifies as a fundamental procedural error.

       2.   Prejudice

The sole ground for Defendant's initial removal was the administrative determination that Defendant's conviction under Conn. Gen. Stat. § 29-38 was a removable firearms offense. Having found that this determination was erroneous, the court finds that the error is prejudicial because "but for the error, the result of the proceeding would have been different." Daley, 702 F.3d at 100 (alterations and citations omitted). The Government does not contend otherwise.

Because Defendant's removal was based on a fundamental error which caused him prejudice, the removal order was fundamentally unfair.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the indictment is GRANTED.

SO ORDERED.

                                      s/Nicholas G. Garaufis

Dated: Brooklyn, New York          NICHOLAS G. GARAUFIS
       February 18, 2016              United States District Judge